PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERESA JOHNSON, | ) | |
| | ) | CASE NO. 5:11CV0406 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| ALLSTATE PROPERTY | ) | |
| AND CASUALTY INSURANCE | ) | |
| COMPANY, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 35] |

This action is before the Court upon Defendant Allstate Property and Casualty Insurance Company's ("Allstate") unopposed[1] Motion for Summary Judgment (ECF No. 35), filed on December 30, 2011.  Allstate argues that Plaintiff Teresa Johnson cannot maintain her causes of action against it as there is no evidence that Allstate has, in any way, failed to satisfy its obligations under the policy of insurance issued to Plaintiff.

**I.**

The following material facts are not genuinely in dispute.  On January 21, 2010, a fire occurred at Plaintiff's residence located at 357 Beechwood Drive in the City of Akron, Ohio.  Plaintiff also suffered a theft loss the day after the fire loss.  Plaintiff had a homeowner's

---

[1] It is the law of the Sixth Circuit that Fed. R. Civ. P. 56 requires a court, even where a motion for summary judgment is unopposed, to determine that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment. *Donlin v. Watkins*, 814 F.2d 273, 277 (6th Cir. 1987); *Kendall v. Hoover Co.*, 751 F.2d 171, 173-74 (6th Cir. 1984).

(5:11CV0406)

insurance policy issued by Allstate. *See* ECF No. 34-1 at 155-201. The policy of insurance included coverage for "additional living expenses" (also known as "ALE") with a limit of $29,152.00 for expenses incurred "up to 12 months." Declarations Page ECF No. 34-1 at 161. Plaintiff filed an insurance claim with Allstate shortly after the fire for the damage to her home and personal property. Allstate proceeded to investigate the fire and on January 22, 2010, Allstate issued to Plaintiff an "advance pay" in the amount of $1,000.00 for initial immediate expenses. Deposition of Plaintiff (ECF No. 34-1) at 55.

Following the fire, Plaintiff hired William "Bill" Bridge of Nation's Construction to handle all of the structural repairs and other aspects related to the fire. ECF No. 34-1 at 61-62, 65-66, and 76. Mr. Bridge consulted with Allstate and reached an agreed upon estimate for the cost of repairs to Plaintiff's home, which reflected a "full replacement cost" of $39,209.68. *See* ECF No. 35-2 at 1 and 19. From that figure, depreciation was held back in the amount of $10,867.15, with the condition that if Plaintiff did elect to repair the damages and those repairs were completed within 180 days from the date of the payment, that depreciation amount would be paid to Plaintiff. *See* ECF No. 35-2 at 1 and 19. Therefore, on March 10, 2010 (within seven weeks after the fire loss), a draft in the amount of $28,342.53 ($39,209.68 minus $10,867.15) was issued to Plaintiff and her mortgage holder, Defendant HSBC Mortgage Services Inc. ("HSBC"). *See* ECF No. 34-1 at 153-54.[2]

---

[2] The Court wonders how the wrong entity (*i.e.*, HSBC Mortgage Corporation) was named as new party defendant in the Second Amended Complaint (ECF No. 18) when the name of the correct entity is listed on the draft.

(5:11CV0406)

In her deposition, Plaintiff confirmed receipt of the draft and that she endorsed it and sent it on to HSBC.  *See* ECF No. 34-1 at 77-78.  To this day, over 23 months later, HSBC still retains possession of those funds totaling $28,342.53.  *See* ECF No. 34-1 at 78-79.  Despite the agreed upon estimate and the fact that funds had been issued by Allstate back in March, 2010, no repairs have been made to Plaintiff's home to date.  Moreover, Plaintiff has not had any contact with anyone at Nation's Construction since approximately February, 2011.  *See* ECF No. 34-1 at 81.

On April 19, 2010, an employee of Allstate spoke with Mr. Bridge of Nation's Construction regarding the status of the structural repairs.  Allstate was advised that Plaintiff was:

> keeping him from starting the structure work because in their contract it states that they will not work with contents in the home.  *Although he agreed to work around these contents, customer will not allow him to.  He is still willing to go into the home and work around these contents.*  Majority of contents are out of the house that are to be cleaned.  Items that customer is disputing are the contents that are left in the home.  He agreed to send me something in writing confirming our conversation.

Claim History Report (ECF No. 35-4) at 38 (emphasis added).

As late as August 25, 2010, over seven months after the fire loss, Plaintiff's own contractor was still willing to perform the structural repairs for the cost that was agreed upon with Allstate.  Mr. Bridge of Nation's Construction contacted Allstate and confirmed that the previously agreed upon price for structural repairs was "still good with him." ECF No. 35-4 at 27.  In that conversation with an employee of Allstate, Mr. Bridge confirmed that "he can

(5:11CV0406)

complete the repairs and put the house back to the condition it was prior to the loss for my estimate amount."  ECF No. 35-4 at 27-28.[3]

In addition to the payment made on March 10, 2010 for the structural repairs totaling $28,342.53, Allstate has made payments for "additional living expenses," cleaning of personal property, unscheduled personal property, repair and replacement as well as other advances through November, 2010.  As of December 29, 2011, the total sum of payments made by Allstate with regard to Plaintiff's fire loss claim is $97,314.90.  The "additional living expenses" payments alone amount to $24,736.19.  *See* Payment Log ECF No. 35-5.[4]

With regard to the theft loss, that matter was resolved on or about June 25, 2010.  At that time, an actual cash value figure totaling $1,634.41 was agreed upon by Allstate and Plaintiff's public adjuster, Alex Semegen.  *See* Claim History Report (ECF No. 35-6) at 5; *see also* Contents Estimating System Printout (ECF No. 35-7).  In her deposition, Plaintiff confirmed receipt of that check in the amount of "about $1,600.00," which was made payable to her, Mr. Semegen, and her prior attorney.

On January 20, 2011, Plaintiff, an Ohio resident, filed a complaint against Allstate in the Summit County, Ohio Court of Common Pleas, being Case No. CV-2011-01-0381.  Allstate

---

[3] If the repairs had been completed within 180 days from March 10, 2010, *i.e.*, September 6, 2010, the depreciation that was held back in the amount of $10,867.15 would have also been paid to Plaintiff and HSBC.

[4] Among the "additional living expenses" that were reimbursed by Allstate were (1) the hotel and nine months of rent in a home immediately after the fire loss, ECF No. 34-1 at 102, and (2) additional travel expenses for Plaintiff to take her granddaughter to and from school from her temporary accommodations, ECF No. 34-1 at 103.

4

(5:11CV0406)

removed the case to this Court on February 25, 2011, on the basis of diversity of citizenship jurisdiction.  Allstate is a corporation duly organized and existing pursuant to the laws of the State of Illinois and maintains its principal place of business in Northbrook, Illinois.  *See* ECF No. 1 at 2.

On January 30, 2012, Plaintiff, with leave of Court, filed a Third Amended Complaint (ECF No. 42) for breach of contract and bad faith in the handling of her claims.  Plaintiff claims that Allstate has failed to fully cover, compensate and indemnify Plaintiff for her separate fire and theft losses and also alleges that Allstate has acted in bad faith by undervaluing Plaintiff's claims.  The Third Amended Complaint added HSBC, the mortgagee, as a new party defendant.  HSBC is a Delaware corporation.  *See* ECF No. 42 at ¶ 3.  Plaintiff claims that in the event the Court determines that Allstate complied with the terms of the policy of insurance, then HSBC breached the terms of its mortgage by failing to pay the proper parties and allow for the proper repairs to be made to Plaintiff's property.  *See* ECF No. 42 at ¶ 26.

**II.**

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v.*

(5:11CV0406)

*Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material

6

(5:11CV0406)

fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.*

### III.

*A.  Breach of Insurance Contract*

A federal court sitting in diversity must apply the substantive law of the forum state.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000).  Establishing a breach of contract claim under Ohio law requires that a plaintiff demonstrate (1) the existence of a binding contract or agreement; (2) the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach.  *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108 (1995).  There is no dispute as to the first, second or fourth requirements.  Allstate argues that it is entitled to summary judgment on the third requirement because it did not fail to fulfill its contractual obligations without legal excuse.  The Court agrees.

That Allstate has satisfied its contractual obligations is evidenced by the fact that within seven weeks of the fire loss, an agreement had been reached between Allstate and the contractor that Plaintiff hired to repair the property.  Within those seven weeks, the initial draft was issued and was subsequently endorsed by Plaintiff.  And five months after that $28,342.53 payment was issued, Plaintiff's contractor was still willing and able to perform the necessary repairs for the agreed upon price.

(5:11CV0406)

Moreover, there is no dispute that Allstate made additional payments pursuant to the insurance contract, including payments for "additional living expenses" totaling $24,736.19. Allstate also made payments to clean the plaintiff's personal property, as well as repair and replace other personal property. Furthermore, Allstate issued to Plaintiff an "advance pay" in the amount of $1,000.00 for initial immediate expenses.

Finally, an actual cash value figure totaling $1,634.41 was agreed upon by Allstate and Plaintiff through her prior attorney, which resolved the theft claim five months after the loss.

There is no evidence that Allstate has breached its insurance contract with Plaintiff for the claims arising from the fire loss of January 21, 2010 and theft loss that occurred on January 22, 2010. Thus, Allstate is entitled to summary judgment in its favor on the breach of contract claims.

**B. Bad Faith**

Under Ohio law, "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, syllabus ¶ 1 (1983). "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, syllabus ¶ 1 (1994). The inquiry under this standard is "whether 'the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial,' not whether the insurance company's decision to deny benefits was correct." *Rauh Rubber, Inc. v. Berkshire Life Ins. Co.,*

8

(5:11CV0406)

No. 98-4122, 98-4244, 1999 WL 1253062, at *2 (6th Cir. Dec.16, 1999) (quoting *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992)).

In the case at bar, Allstate has made payments totaling over $97,000.00 with regard to the fire loss. Additionally, Allstate has paid "about $1,600.00" to Plaintiff on the theft claim.

Plaintiff has not presented any Rule 56 evidence showing that Allstate acted without reasonable justification during the adjustment of any part of Plaintiff's claims. The evidence shows that Allstate reached an agreement with Plaintiff's own contractor for the price and scope of repairs and that seven months after the loss, Plaintiff's contractor was still willing to complete the repairs for the agreed upon price; a price for which Allstate had issued payment within seven weeks after the fire loss. The Court finds that not only had Allstate adjusted Plaintiff's claim in good faith, but it did so in an expeditious manner.

Allstate has also made payments in excess of $24,000.00 for additional living expenses, which includes the cost for temporary accommodations for Plaintiff for a period of nine months after the fire loss. The majority of those nine months comprise Plaintiff's own delay long after Allstate had made payment for the structural repairs, which Plaintiff prevented her own contractor from completing.

The evidence in this matter shows that Allstate acted in good faith. The Court finds Plaintiff has failed to present a *prima facie* case of bad faith. Thus, Allstate is entitled to summary judgment in its favor on the bad faith claims.

(5:11CV0406)

## IV.

Defendant Allstate Property and Casualty Insurance Company's Motion for Summary Judgment (ECF No. 35) is GRANTED upon the grounds that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law.

Remaining on the Court's docket is Plaintiff's claim that HSBC breached the terms of its mortgage by failing to pay the proper parties and allow for the proper repairs to be made to Plaintiff's property. *See* ECF No. 42 at ¶ 26.

    IT IS SO ORDERED.

| | |
|---|---|
| February 29, 2012 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |